UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CARNES FUNERAL HOME, INC., | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION H-20-780 |
| | § | |
| ALLSTATE INSURANCE COMPANY, | § | |
| | § | |
| *Defendant.* | § | |

## Memorandum Opinion and Order

Pending before the court are the following motions: (1) a motion for summary judgment filed by plaintiff Carnes Funeral Home, Inc. ("Carnes") (Dkt. 11); (2) a motion for leave to file an amended answer and counterclaim filed by defendant Allstate Insurance Company ("Allstate") (Dkt. 12); and (3) a motion for summary judgment filed by Allstate (Dkt. 16). Having considered the motions, responses, supplements to the motions for summary judgment (Dkts. 20–21), replies, and the applicable law, the court is of the opinion that Carnes's motion for summary judgment (Dkt. 11) should be GRANTED; Allstate's motion for summary judgment (Dkt. 16) should be GRANTED IN PART AND DENIED IN PART; and (3) Allstate's motion to amend (Dkt. 12) should be GRANTED AS UNOPPOSED IN PART AND DENIED PART.

### I. BACKGROUND

This case is about whether a funeral home's insurer has a duty to defend and indemnify it in a state-court case relating to the funeral home's alleged negligence. Carnes purchased a Commercial General Liability Policy with a Funeral Directors Liability Coverage Endorsement (the "Policy") from Allstate. Dkt. 1. The term of coverage was July 24, 2017, through July 24, 2018. *Id.* The plaintiff in the underlying lawsuit filed its claim against Carnes in the 80th Judicial

District Court of Harris County, Texas, and Carnes requested that Allstate provide for its defense under the Policy. *Id.* Allstate agreed to defend Carnes but reserved its rights to withdraw the defense. Dkt. 11, Ex. C.

Carnes filed this lawsuit on March 4, 2020, seeking a declaratory judgment that Allstate has a duty to defend Carnes in the underlying lawsuit under the Policy. Dkt. 1. Allstate filed an answer, and it now seeks to file an amended answer that includes a counterclaim. Dkts. 5, 12. The parties have also filed cross motions for summary judgment. Dkts. 11, 16.

## A.    The Underlying Lawsuit

On January 15, 2018, Laura Lee Jones (the "Decedent") passed away. Dkt. 20, Ex. A (second amended petition in *Parras v. Carnes*, No. 2019-67238 (Oct. 12, 2020)). Kristin Parras, who is the plaintiff in the underlying lawsuit, is the Decedent's daughter. *Id.* Parras contacted Carnes to transport her mother's body from Harris County Institute of Forensic Sciences ("HCIFS") to the funeral home to be cremated. *Id.* Parras contends that "removal"—the term used for picking up and transporting a body in the funeral industry—is a professional service offered by Carnes. *Id.*

On January 19, 2018, Carnes sent two licensed funeral directors to HCIFS, and they placed the Decedent in a special vehicle—a "removal vehicle"—that is allegedly designed with multiple roll up doors on each side and removable trays and tables for loading bodies. *Id.* Carnes was picking up eight bodies at HCIFS, including the Decedent. According to the underlying petition, when Carnes was traveling back to the funeral home, it "carelessly allowed the body of Ms. Jones to fall out of the vehicle on Old Spanish Trail in Houston, Texas" and Carnes "failed to realize the body of Ms. Jones left the vehicle and continued on leaving the body behind." *Id.* This allegedly happened because the licensed funeral home directors failed to use a checklist when placing the

Decedent in the removal vehicle and thus did not notice that they failed to set the "stop" on the gurney and did not close the roll up door.  *Id.*  The Decedent was found in a ditch on the side of the road by good Samaritans.  *Id.*  The good Samaritans contacted authorities, who eventually notified Carnes, which retrieved the body.  *Id.*  According to Parras, the Executive Director of Carnes said that it appeared "'a door was not properly secured, which allowed the decedent to come out . . . .'"  *Id.*

Parras filed a lawsuit against Carnes in state court, asserting claims for violations of the Texas Deceptive Trade Practices Act ("DTPA") and negligence.  *Id.*  Among other things, she contends that Carnes failed to train its employees, failed to inspect the vehicle, failed to follow the transportation checklist and its own policies and procedures, and failed to properly supervise the removal of the Decedent.  *Id.*  She asserts that, as a result, she has suffered mental anguish and will suffer additional mental anguish in the future.  *Id.*  She has amended her state-court petition two times.

**B.**  **Allstate's Motion to Amend**

The court turns now to the instant lawsuit, which relates to whether Allstate must defend Carnes against Parras's claims in the underlying lawsuit.  Allstate filed its answer on March 17, 2020.  Dkt. 5.  On September 4, 2020, it filed an opposed motion to amend its answer so that it could add a counterclaim.  Dkt. 12.  Carnes's complaint seeks a declaratory judgment that Allstate has a duty to defend, and Allstate seeks to add a counterclaim requesting a declaration that not only does it not have a duty to defend, it does not have a duty to indemnify.  *Id.*

Carnes is not opposed to Allstate filing an amended answer, but it is opposed to allowing Allstate to add a counterclaim for a declaratory judgment relating to indemnity.  Dkt. 14.  Carnes asserts that Allstate already agreed that the only issue in this case is the duty to defend, the duty to

3

indemnify is not justiciable at this time, and the new proposed counterclaim for a declaration on the duty to indemnify will unduly prejudice Carnes in connection with its motion for summary judgment on the duty to defend issue.  *Id.*

Allstate replies that it seeks resolution of both issues for judicial economy purposes because there is no duty to indemnify for the same exact reasons there is no duty to defend.  Dkt. 15.  It asserts that while generally the duty to indemnify cannot be adjudicated until there is a judgment in the underlying lawsuit, there is an exception when the court can determine whether there is a duty to indemnify based only on the pleadings in the underlying lawsuit and it is precluded for the same reason the duty to defend is precluded.  *Id.*  Allstate asserts that this exception applies here.

Whether the court allows the counterclaim on the duty to indemnify will depend on the outcome of the motions for summary judgment.  If the court determines there is a duty to defend, the exception will not apply, and the parties agree that it would be premature to consider the indemnification issue.

## C.    Motions for Summary Judgment

Carnes requests that the court enter summary judgment in its favor and declare that Allstate has a duty to defend it in the underlying case.  Dkt. 11.  Carnes contends that the Funeral Directors Liability Coverage Form provides coverage.  *Id.*  Carnes asserts that because Parras seeks damages for "mental anguish" in the underlying lawsuit, and the anguish allegedly arose out of Carnes's "wrongful act" during the policy period when Carnes was rendering professional services as a funeral director, the duty to defend is triggered.  *Id.*  It notes that neither "professional services" nor "arising out of" is defined in the Policy, but that if one considers these phrases under their ordinarily and commonly understood meaning, this suit sits squarely within the scope of coverage provided by the Policy.  *Id.*  It asserts that "there can . . . be no doubt that Parras alleges that

4

Carnes's acts, errors and/or omissions were in the *rendition of professional services as a funeral home director*." *Id.*

Allstate opposes Carnes's motion and separately moves for summary judgment in its favor and a declaration that there is no duty to defend or indemnify.  Dkt. 16.  It argues that coverage is precluded because neither the Commercial General Liability Coverage Form, which Carnes does not mention in its complaint, nor the Funeral Directors Liability Coverage Form applies.  *Id.*  With regard to the Commercial Liability Coverage Form, Allstate argues that the allegations in the underlying lawsuit do not involve "bodily injury" or "property damage" as defined in the Commercial Liability Coverage Form portion of the Policy, and even if the Policy did cover these types of claims, they are barred by the "Auto" exclusion in the Commercial Liability Coverage Form portion of the Policy.  *Id.*

With regard to the Funeral Directors Liability Coverage Form, Allstate notes that the Policy covers negligent acts, errors, or omissions "in the rendering of professional services as a funeral director or embalmer," which it contends means that "the negligent conduct must actually occur in the process of a 'professional service' being performed."  Dkt. 17.  Allstate asserts that the incident described in the underlying lawsuit did not involve the "rendering of professional services as a funeral director" and the claims thus do not fall within the scope of the Policy.  *Id.*  It points out that under Texas law "professional services" are "more than ordinary tasks, and instead [the phrase] refers to activities that are particular to a specialized vocation."  *Id.*  Allstate argues that the alleged harmful conduct here, allowing the body to fall out of a moving vehicle because Carnes failed to properly secure the door, cannot be a "professional service" because it did not involve specialized knowledge, labor, or skill, and it was not a mental or intellectual activity.  *Id.*

Additionally, driving the body to the funeral home is, according to Allstate, an ordinary task and not a "professional service."  *Id.*

Allstate argues that no set of facts that could be introduced at the trial in the underlying lawsuit would allow for coverage, and the court should therefore grant summary judgment in its favor on not only on the duty to defend but also the duty to indemnify.  *Id.*

**D.    The Policy**

Carnes bases its argument on the following terms of the Funeral Directors Liability Coverage Form of the Policy:

> 1. INSURING AGREEMENT
> a. We will pay those sums that the insured becomes legally obligated to pay as damages because of the insured's wrongful acts to which this insurance applies. No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided in 3., Supplemental Payments:
>
> This insurance applies to:
>
> (1) Bodily injury, including mental anguish, and
> (2) property damage caused by a wrongful act which occurs during the policy period arising out of the rendering of professional services as a funeral director or embalmer.
>
> We shall have the right and duty to defend any suit against an insured seeking those damages but:
> . . . .
> (4) If this insurance does not apply, we have no duty to defend.

Dkt. 1 (quoting the Policy); *see also* Dkt. 16-1 at 150 of 166 (page 1 of the Funeral Directors Liability Coverage Form).  The Funeral Directors Liability Coverage Form contains the following relevant definitions:

> a. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death, resulting from any of these at any time.
> b. "Mental anguish" means extreme distress of the mind.
> . . . .

6

> f. "Wrongful act" means a negligent act, error or omission in the rendering of professional services as a funeral director or embalmer.

*Id.* at 154–55 of 166 (pages 5–6 of the Funeral Directors Liability Coverage Form).

Allstate asserts the Funeral Directors Liability Coverage Form does not provide coverage, and it also argues that the Commercial General Liability Coverage Form does not provide coverage.[1]  This Commercial General Liability Form provides coverage for "bodily injury" and "property damage" caused by an "occurrence" that takes place in the "coverage territory" and occurs during the "policy period."  Dkt. 16-1 at 115 of 166 (page 1 of the Commercial Liability Coverage Form).

Allstate relies on the following exclusion, which is part of the Commercial General Liability Coverage Form:

> This insurance does not apply to:
>
> **g. Aircraft, Auto Or Watercraft**
>
> "Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any . . . "auto" . . . owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".
>
> This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any . . . "auto" . . . that is owned or operated by or rented or loaned to any insured.

---

[1] While the names of these documents indicate they are separate "forms," the parties agree that the Policy is a Commercial General Liability Policy with a Funeral Directors Liability Coverage Endorsement.  Dkts. 1, 16."  The "Policy" is 166 pages within which the sixteen-page General Commercial Liability Form and the six-page Funeral Directors Liability Coverage Form are located.

Dkt. 16-1 at 118 of 166 (page 4 of 16 of the Commercial General Liability Coverage Form).

The Commercial Liability Coverage Form provides the following definitions:

> "Auto" means:
> a. A land motor vehicle . . . designed for travel on public roads, including any attached machinery or equipment; or
> b. Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.
> . . . .
> "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.
> . . . .
> "Loading or unloading" means the handling of property:
> a.   After it is removed from the place where it is accepted for movement into on onto an aircraft, watercraft or "auto";
> . . . .
> but "loading and unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

Dkt. 16-1 at 127–30 of 166 (pages 13–15 of the Commercial General Liability Coverage Form).

The court will first provide the legal standards for motions for summary judgment, duty to defend, duty to indemnify, and contractual interpretation, and then proceed with its analysis of the questions of law presented in the parties' motions.

## II. LEGAL STANDARDS

### A.      Summary Judgment

A court shall grant summary judgment if a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a).  "[A] fact is genuinely in dispute only if a reasonable jury could return a verdict for the nonmoving party." *Fordoche, Inc. v. Texaco, Inc.*, 463 F.3d 388, 392 (5th Cir. 2006).  The moving party bears the initial burden on demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2552 (1986).  If the moving party

8

meets its burden, the burden shifts to the non-moving party to set forth specific facts showing a genuine issue for trial. Fed R. Civ. P. 56(e). The court must view the evidence in the light most favorable to the non-movant and draw all justifiable inferences in favor of the non-movant. *Envtl. Conservation Org. v. City of Dallas*, 529 F.3d 519, 524 (5th Cir. 2008).

**B.     Duty to Defend**

Under Texas law, courts follow the "eight corners" rule to determine whether an insurer has a duty to defend. *Federated Mut. Ins. Co. v. Grapevine Excavation Inc*., 197 F.3d 720, 723 (5th Cir. 1999). "Under this rule, courts compare the words of the insurance policy with the allegations of the plaintiff's complaint to determine whether any claim asserted in the pleading is potentially within the policy's coverage." *Id.* "The duty to defend analysis is not influenced by facts ascertained before the suit, developed in the process of litigation, or by the ultimate outcome of the suit." *Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 552 (5th Cir. 2004). Rather, it is determined by examining the eight corners of the pleading and the policy. *Zurich Am. Ins. Co. v. Nokia, Inc.*, 268 S.W.3d 487, 491 (Tex. 2008). The court must consider "the latest, and only the latest, amended pleadings." *Rhodes v. Chi. Ins. Co.*, 719 F.2d 116, 119 (5th Cir. 1983); *see Century Sur. Co. v. Seidel*, 893 F.3d 328, 333 (5th Cir. 2018) ("Texas courts follow the 'eight-corners' rule, which 'looks only to the four corners of the most recent complaint in the underlying action as well as the four corners of the insurance policy.'" (quoting *City of College Station, Tex. v. Star Ins. Co.*, 735 F.3d 332, 336 (5th Cir. 2013))). All doubts with regard to the duty to defend are resolved in favor of the duty. *Id.*

Courts applying the eight corners rule "give the allegations in the petition a liberal interpretation." *Nat'l Union Fire Ins. Co. of Pittsburgh v. Merchs. Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141 (Tex. 1997). Courts must not, however, "read facts into the pleadings, . . . look

9

outside the pleadings, or imagine factual scenarios which might trigger coverage." *Id.* at 142.  The insured has the burden of showing that a claim is potentially within the coverage of the policy. *Federated Mut. Ins. Co.*, 197 F.3d at 723.

## C.     Duty to Indemnify

In Texas, an "insurer's duty to defend and duty to indemnify are distinct and separate duties." *Farmers Tex. Cty. Mut. Ins. Co. v. Griffin*, 955 S.W.2d 81, 82 (Tex. 1997).  An "insurer may have a duty to defend but, eventually, no duty to indemnify." *Id.*  The duty to indemnify is not ripe if coverage turns on facts actually proven in the underlying lawsuit.  *Id.* at 84. However, the issue "is justiciable . . . when the insurer has no duty to defend and the same reasons that negate the duty to defend likewise negate any possibility the insurer will ever have a duty to indemnify." *Id.*  Typically, the duty to indemnify "cannot be adjudicated until there has been a judgment in the underlying suit because facts proven at trial may differ slightly from the allegations." *Solstice Oil & Gas I, L.L.C. v. Seneca Ins. Co.*, 655 F. App'x 221, 225 (5th Cir. 2016) (citing *Hartford Cas. Ins. Co. v. DP Eng'g, L.L.C.*, 827 F.3d 423, 431 (5th Cir. 2016)).

## D.     Construing Insurance Policies

Courts applying Texas law construe insurance contracts in the same manner as other contracts.  *State Farm Life Ins. Co. v. Beaston*, 907 S.W.2d 430, 433 (Tex. 1995).  Courts must "strive to give effect to the written expression of the parties' intent," which requires reading "all parts of a contract together."  *Id.*  "[C]ourts must be particularly wary of isolating from its surroundings or considering apart from other provisions a single phrase, sentence, or section of a contract."  *Id.*  If, after applying the canons of interpretation an insurance policy remains ambiguous, its language must be construed "against the insurer in a manner that favors coverage." *Id.*

## III. ANALYSIS

Carnes seeks summary judgment on its request for a declaratory judgment that Allstate has a duty to defend it in the underlying lawsuit under the Funeral Directors Liability Form.  Dkt. 11.  Allstate seeks summary judgment that it does not have a duty to defend Carnes under either the Funeral Directors Liability Form or the Commercial Liability Coverage Form.  Dkt. 16.  It also seeks a declaration that the auto exclusion in the Commercial Liability Coverage Form applies.  *Id.*  It additionally seeks to add a counterclaim that includes a request for a declaration that it does not have a duty to indemnify Carnes should Parras be successful in the underlying lawsuit, and it requests that the court enter judgment in its favor on its duty to indemnify for the same reasons it does not have a duty to defend.  Dkts. 12, 16.  The court will first address whether there is a duty to defend under each of the forms, and then consider whether to allow the amendment to Allstate's answer.

### A.    The Funeral Directors Liability Coverage Form

Carnes's arguments center around the Funeral Directors Liability Coverage Form, so the court will begin with the arguments relating to whether it provides coverage for the underlying claims as set forth in the second amended petition.  The parties disagree about whether the services Parras alleges Carnes provided in the underlying petition are "professional services," a term that is not defined, and they disagree about causation.  Carnes contends the terms of the Funeral Directors Liability Form require that Parras's mental anguish arose out Carnes's rendering of a professional service, and Allstate argues that the form requires that the mental anguish directly result from a negligent act, error, or omission in the rendering of professional services.  The court will first consider the arguments relating to "professional services."

### 1.      "Professional Services"

In the underlying petition, Parras asserts that "[r]emoval is a professional service offered by Carnes Funeral Home wherein one or more funeral directors will retrieve the deceased and bring it to the funeral home.  Removal is a term used in the industry."  Dkt. 20-1.  She asserts that the individuals who removed her mother's body were licensed funeral directors and that the HCIFS required somebody with a funeral director's license to remove the body.  *Id.*  She points out that Carnes used a specialized vehicle with multiple roll up doors and trays and tables and that Carnes failed to use a "transportation checklist" that the funeral home is supposed to use before transporting bodies.  *Id.*  This resulted, according to the petition, in a failure to set the "stop" on the gurney in side the removal vehicle and a failure to close the roll up door.  *Id.*

Carnes contends that the harm alleged resulted from its professional services as a funeral director just as Parras contends in her state-court petition. Dkt. 18.  It asserts that if Allstate desired to limit the term "professional services," it could have defined it in the Policy, and it also could have specifically excluded "removal services" from coverage on the Funeral Directors Liability Coverage Form.  *Id.*  Carnes cites a case in which a funeral director policy endorsement specifically *included* removal of bodies as a professional service.  *Id.* (citing *Bohreer v. Erie Ins. Group*, 475 F. Supp. 2d 578 (E.D. Va. 2007) (quoting policy language that the insurance company "would pay damages because of bodily injury or property damage 'arising out of the rendering or failure to render any professional services *as a funeral director*, including the . . . embalming, handling, disposition, burial, disinterment, eye enucleation, or removal of a body . . . .'")).  Carnes contends that since Allstate did not include similar language, it "cannot reasonably contend that the scope of the term 'professional services' cannot encompass 'removal of bodies.'"  *Id.*

12

Allstate concedes that Parras contends in her state-court petition that transporting her mother's body was a "professional service," but it argues that saying it is a professional service does not make it true. Dkt. 16. Allstate argues that the wrongful act alleged in the underlying petition is not a "wrongful act" as defined in the Funeral Directors Liability Coverage Form because transporting a body is not a "professional service" as that term is defined under Texas caselaw. *See* Dkt. 16 at 10–11.

Allstate primarily relies on *Atlantic Lloyd's Insurance Co. of Texas v. Susman Godfrey, L.L.P.*, 982 S.W.2d 472 (Tex. App.—Dallas 1998, pet. denied), and *Certain Underwriters at Lloyd's, London v. AmWest Financial, Inc.*, No. H-04-4024, 2005 WL 1994290 (S.D. Tex. Aug. 17, 2005). In *Susman Godfrey*, the Texas Supreme Court was considering whether a solicitation letter that Susman Godfrey sent to a prospective client provided a "professional service" under a "professional services" exclusion in an insurance policy. 982 S.W.2d at 476. The *Susman Godfrey* court instructed that "it is clear that a professional must perform more than an ordinary task to perform a professional service." *Id.* The service "must arise out of acts particular to the individual's specialized vocation." *Id.* at 476–77. The court found that the fact that attorney solicitation is regulated by the State Bar does not render sending a solicitation letter a "professional service" because that would mean "almost any matter regulated would be subsumed into a matter inherent in that profession," and "[n]ot all acts performed by a professional are professional services." *Id.* at 477. The court looked to the substance of the letter itself to determine if it provided a professional service. *Id.* It held that sending the letter was not a professional service because it only offered the possibility of representation, which provided the firm with the opportunity to offer professional services. *Id.* The court found it important that sending the letter did not require specialized skill or education or knowledge inherent to lawyers. *Id.*

13

Here, Allstate, focusing only on the allegations of negligence during the transport as opposed to negligent loading, argues that driving a vehicle is not a "professional service" of a funeral home director because it did not require specialized skill.  Dkt. 16.  However, under the state-court petition, the plaintiff alleges that the funeral home failed to use a checklist when loading the body into a specialized vehicle, which is a something specialized and requires knowledge inherent to funeral home directors.   While Allstate appears to suggest Carnes's work in transporting bodies is similar to putting a box in the back of a station wagon and shutting the back before driving away, the state-court petition suggests otherwise.   It requires a checklist, a specialized vehicle, and latches.

In *AmWest Financial*, Magistrate Judge Johnson noted that "an act must be more than an ordinary task to be a 'professional service," and that it is "not a professional service merely because it is performed by a professional."  2005 WL 1994290, at *7.  That being said, "[o]rdinary or administrative acts can be 'professional services' if they are vital to the core business of the professional."  *Id.*  "The focus should be on the act itself and not the title or character of the party performing the act."  *Id.*  The *AmWest Financial* defendants had performed certain information gathering actions that required them to "use their knowledge of the mortgage lending industry" to arrange mortgage loans.  *Id.*  Judge Johnson determined that their actions were "professional services" as a financial lender because they "were not merely incidental or administrative in relation to Defendant's business" and, in fact, "were at the heart of the alleged scheme."  *Id.* at *8.

Here, Allstate argues that the underlying lawsuit is about driving the decedent's body to the funeral home without securing the door, which it asserts is an activity that can be performed by anyone, and it did not involve preparing the body for viewing, embalming, or cremation.  Dkt. 16 at 17.  Carnes contends that the body could only be released to a funeral director, but

14

Allstate asserts that, even so, a funeral director did not have to *drive* the body. *Id.* As far as the vehicle being a specialized "removal vehicle," Allstate conclusorily states that "the nature and characteristics of the vehicle have absolutely no bearing on whether the activity at issue constitutes a 'professional service.'" *Id.* It asserts that Texas law focuses only on the task performed, not the vehicle involved, but here the task performed is securing a body in a specialized vehicle. This is not a task that just anyone could perform. Not only does Harris County require that the body be released to a funeral director, only somebody with specialized knowledge would know what to do with it at that point. The petition in the underlying lawsuit specifically states that the vehicle has removal tray/tables to load and unload bodies" and that Carnes failed to use a special checklist to make sure it was done properly. This is a professional service of a funeral director, not something that, as Allstate alleges, any 16 year old (with no training) could do.

Allstate also cites *Laboss Transportation Services, Inc. v. Global Liberty Insurance Company of New York*, a case from Florida in which the court found that a bus driver who was trained to secure wheelchairs on the bus was not engaged in "professional services" as used in the professional services exclusion of an insurance policy. Dkt. 16 (citing *Laboss Transp. Servs., Inc. v. Glob. Liberty Ins. Co. of N.Y.*, 188 F. Supp. 3d 1320, 1327 (S.D. Fla. 2016)). In the underlying lawsuit, a driver for the insured company that provided transportation to hospitals, clinics, and homes, allegedly failed to secure a wheelchair using a special safety restraint system, and the wheelchair flipped backward as the driver accelerated at a stoplight, causing injury to the wheelchair occupant. *Laboss Transp. Servs.*, 188 F. Supp. 3d at 1323.

The policy in *Laboss Transportation* excluded coverage for "'Bodily injury' resulting from the providing or the failure to provide any medical or other professional services." *Id.* at 1325. The court was tasked with determining whether coverage was excluded because restraining a

wheelchair was a "professional service." *Id.* In finding that it was not, the court relied heavily on the following dictionary definition of "professional": "A person who belongs to a learned profession or whose occupation requires a high level of training and proficiency." *Id.* at 1327. It also relied on a decision from the Western District of Oklahoma that required professional services to be "predominantly mental or intellectual, rather than physical or manual." *Id.* (relying on *Gulf Ins. Co. v. Gold Cross Ambulance Serv. Co.*, 327 F. Supp. 149, 152 (W.D. Okla. 1971)).

While some Texas cases have used elements of the definitions relied on by the *Laboss Transportation* court when determining the definition of "professional services" when it is not defined in an insurance policy, the main definition of "professional services" upon which Texas courts rely is "the task must arise out of acts particular to the individual's specialized vocation, [and] . . . it must be necessary for the professional to use his specialized knowledge or training." *Susman Godfrey,* 982 S.W.2d at 476–77. In Texas, "[p]rofessional services are considered those acts which use the inherent skills *typified* by that profession, not *all* acts associated with the profession." *Id.* at 477.

In the instant case, securing the decedent in a specially equipped vehicle, setting the stop on the gurney, closing the roll up door in a vehicle that holds multiple bodies, and going over the checklist to make sure all of that was done correctly before driving the vehicle required specialized knowledge and training. Allstate argues that even if Carnes's funeral directors had to be trained on how to secure the gurney, failure to secure it does not involve a "professional service." Dkt. 21. However, it is important to note that the court is not considering a generic "professional services" services *exclusion*, like the *Laboss Transportation* court, and it is not considering the term in isolation; instead, the Funeral Directors Liability Coverage Form refers to "professional services *of a funeral director*." Making sure a body is secure in a removal vehicle and going over a special

16

checklist to ensure all is in order prior to transport is precisely the type of professional service a funeral director would be trained to do, and the clients of a funeral home would depend on that specialized knowledge and training to ensure the remains of their loved one did not end up in a ditch on the side of the road. While perhaps not the most mental or intellectual of tasks, it is certainly the type of professional service one would expect of a funeral director.

The only case provided by the parties that addresses "professional services" that relates in any way to funeral home directors is *Bohreer*, 475 F. Supp. 2d 578. In *Bohreer*, the court had to determine whether a "professional services" exclusion applied.[2] In the underlying case, the plaintiffs alleged that a crematory mishandled the cremated remains of a decedent and the decedent's family received the ashes labeled as the remains of a cremated pet with the name of the decedent ("identifying the cremains as a 'pet' named Marion Jay Bohreer"). *Bohreer*, 475 F. Supp. 2d at 586–87. The remains received were not human remains. *Id.* at 581. The policy at issue did not cover "damage due to any service of a professional nature," and the court determined that it must "look to the nature of the insured's act or conduct, to determine whether the insured's act arise[s] out of the rendering or failure to render . . . 'professional services.'" *Id.* at 585 (cleaned up). While the error at issue may have merely been mislabeling the remains as pet remains, the court found that the allegations went "to the very essence of the professional service provided by a crematory, namely the proper performance of a cremation and the proper delivery of the unadulterated cremated remains." *Id.* at 587. It found that there "is simply no doubt that

---

[2] The crematory's previous policy had a funeral directors professional liability endorsement, but its policy at the time of this incident did not. 475 F. Supp. 2d at 588. There was a dispute as to whether the policy should be reformed to include the funeral directors endorsement, but the court ultimately found that the endorsement would not have provided coverage anyway because funeral director services are distinct from crematory services, and the ordinary and plain meaning of funeral director does not include handling cremated remains. *Id.* at 588–89.

where . . . the 'clerical' act is necessary to perform the professional service properly, that act 'arises out of' a professional service." *Id.* The court found it important that the "clerical act of labeling cremated remains" was "inextricably intertwined with the professional service of cremation." *Id.*

Here, "professional services" is not defined, but it is modified by "of a funeral home director." While some courts seem to struggle with determining what types of professional services the term is meant to describe in a generic context, here the Policy makes clear the professional services at issue are the type of services that funeral home directors would be specifically trained to do. The allegations in the underlying petition indicate that there was a specific checklist that Carnes was supposed to follow while securing the decedent's body in a specially equipped vehicle. This is the type of knowledge and skill only a professional funeral home director would have, much like going through a pre-flight checklist for an airline is the type of skill only a professional pilot would have. The court finds that ensuring the decedent was properly secured in a specially equipped removal vehicle before the decedent was transported is a "professional service of a funeral home director."

### 2. Causation

The determination that Carnes's alleged wrongful act was a "professional service of a funeral home director," however, does not end the dispute as to whether there is a duty to defend under the Funeral Directors Liability Form. Allstate argues that the Funeral Directors Liability Coverage Form requires direct causation, and the underlying petition does not support the contention that Parras's mental anguish was caused by the rendering of a professional service as a funeral director. Dkt. 21. It asserts that "movement of the vehicle with an open door was the triggering event." *Id.* Carnes asserts, on the other hand, that the Funeral Directors Liability

18

Coverage Form only requires that the injury or harm be related to the provision of professional services because it uses the term "arising out of." Dkt. 18. It argues that the use of the phrase "arising out of" in the notation of what the "insurance applies to" is significant because it requires that the injury or harm merely be related to the provision of professional services. *Id.*

The first issue in determining what the contract says about causation is determining whether the "arising out of" language in the Policy only modifies "property damage," as advanced by Allstate, or also modifies "mental anguish," as Carnes argues. The Funeral Directors Liability Form applies to

(1)      Bodily injury, including mental anguish, and
(2)      property damage caused by a wrongful act which occurs during the policy period arising out of the rendering of professional services as a funeral director or embalmer.

Dkt. 16, Ex. A at 150 of 166 (page 1 of the Funeral Directors Liability Coverage Form).

Allstate argues that the words "arising out of" appear in the policy language in connection with a claim for *property damage* and do not appear in the policy language applicable to *mental anguish*, and the court cannot read them into the policy language. Dkt. 19. Carnes argues that when one places the definition of "wrongful act"—"negligent act, error or omission in the rendering of professional services as a funeral director or embalmer"—in the coverage portion of the Funeral Directors Liability Coverage Form, it results in the following: "This insurance applies to (1) Bodily injury, including mental anguish, and (2) property damage *caused by* a negligent act, error or omission in the rendering of professional services as a funeral director or embalmer which occurs during the policy period *arising out of* the rendering of professional services as a funeral director or embalmer." *See* Dkt. 18. Thus, there is a conflict over (1) whether the "arising out of" language modifies "bodily injury, including mental anguish, at all; and (2) whether the mental

anguish and property damage must be directly caused by the negligence or arise out of it.  Carnes asserts that the only reasonable interpretation is that the mental anguish must "arise out of" the rendering of professional services because (1) Allstate originally interpreted the contract this way;[3] (2) failing to give effect to the "arising out of" policy language would violate the rule against surplusage" as all parts of the contract must be read together and courts should strive to give meaning to every sentence; and (3) giving effect to the "arising out of" language harmonizes the policy language and cures the redundancy.  *Id.*

Allstate replies that the policy does not state that coverage is afforded if the mental anguish "arises out of" the rendering of professional services as a funeral director"; rather, mental anguish is potentially covered only if the mental anguish directly results from "a negligent act, error or omission in the rendering of professional services as a funeral director."  Dkt. 19.  It reiterates that the words "arising out of" appear only in connection with a claim for property damage, not in the policy language applicable to a claim for mental anguish, and the court may not read those words into the policy.  *Id.*

Examining the plain language of the insurance contract, it is clear why there is a dispute. The following text follows "property damage": "caused by a wrongful act which occurs during the policy period arising out of the rendering . . . ."  It appears that Allstate is arguing that the "arising out of" portion only modifies "property damage" and not "bodily injury, including mental anguish," portions of the sentence.  However, Allstate also appears to argue that the "caused by a wrongful act which occurs during the policy period" portion of the sentence modifies both.  That construction does not make sense.  While the use of the numbers and the formatting in the Policy

---

[3] Allstate's previous interpretation is not part of the eight corners.

could cause some confusion as to whether the subsequent phrases were meant to apply to only the "property damage" or to both "property damage" and "bodily injury, including mental anguish," the fact that Allstate certainly did not mean to cover "Bodily injury, including mental anguish" in isolation from a wrongful act makes it clear that the text following "property damage" applies to both property damage and bodily injury (including mental anguish).[4]  Moreover, if "bodily injury, including mental anguish" were not meant to be modified by the phrases after "property damage" and the phrases were not needed to clarify when bodily injury was covered, it would have been superfluous to add "caused by a wrongful act which occurs during the policy period" for property damage.  The court "must examine and consider the entire contract in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered superfluous." *Phillips 66 Co. v. Smith Tank & Equip. Co.*, No. 4:17-cv-03888, 2018 WL 4334007, at *2 (S.D. Tex. July 31, 2018) (citing *Universal C.I.T. Credit Corp. v. Daniel*, 150 Tex. 513, 518 (1951)).  The court finds that, after apply the rules of construction, Allstate's construction is not reasonable.

Having determined that the language after "property damage" must apply to both "property damage" and "bodily injury, including mental anguish" when the contract is read as a whole, the court now must determine what is meant by "mental anguish" that is "caused by a wrongful act which occur[red] during the policy period arising out of the rendering of professional services as a funeral director or embalmer."  When interpreting insurance contracts, "each part of the contract must . . . be given effect and meaning" and an "interpretation that gives a reasonable meaning to

---

[4] Though not addressed by the parties, this conclusion is supported by other language in the Funeral Directors Liability Coverage Form.  Under "Limits of Insurance," the form states that "each wrongful act limit is the most we will pay for all damages arising out of one covered wrongful act."  Dkt. 16, Ex. A at 152 of 166 (page 3 of the Funeral Directors Liability Coverage Form).  It does not state "all property damage" or differentiate between types of damages, thus indicating that the coverage is for the specified types of damages that arose out of covered wrongful acts.

all provisions is preferable to one that leaves a portion of the policy useless, inexplicable, or creates surplusage." *Columbia Cas. Co. v. Ga. & Fla. RailNet, Inc.*, 542 F.3d 106, 112–13 (5th Cir. 2008) (applying Texas law).  Carnes argues that a reading that does not apply the "arising out of language" to mental anguish violates this rule. Dkt. 18.  It encourages the court to harmonize the policy language and to cure redundancies by interpreting the policy as covering injuries "arising out of" the rendition of professional services as a funeral director and also injuries caused by the rendition of professional services as a funeral director. *Id.*  Of course, the Policy does not say "*or* arising out of"; instead, it is almost like the "arising out of" phrase is randomly tacked on to the end of the sentence.  But, in order to give meaning to all the terms in the contract, construing it as either/or is the only reasonable interpretation.  It cannot be both, and the "arising out of" phrase would be mere surplusage if the court were to only consider the "caused by" phrase and not the "arising out of" phrase.  Thus, Carnes's interpretation is the only reasonable interpretation.

The court notes, in the alternative, that if somehow Allstate's interpretation were also reasonable, then there would be two reasonable interpretations, which renders the contract ambiguous under Texas law.  *See Kelley-Coppedge, Inc. v. Highlands Ins. Co.*, 980 S.W.2d 462, 465 (Tex. 1998) (Only if "after applying the applicable rules of construction, a contract term is susceptible of two or more reasonable interpretations will the term be ambiguous.").  In the insurance contract context, ambiguities are construed against the insurer.  *State Farm Life Ins. Co.*, 907 S.W.2d at 433.  Thus, Carnes's construction would still prevail.

Under Texas law, "'arising out of" means "simply a 'causal connection or relation' . . . which is interpreted to mean that there is but for causation but not necessarily direct or proximate causation.  *Utica Nat'l Ins. Co. of Tex. v. Am. Indem. Co.*, 141 S.W.3d 198, 203 (Tex. 2004) (quoting *Mid-Century Ins. Co. of Tex. v. Lindsey*, 997 S.W.2d 153, 156 (Tex. 1999)); *see also Am.*

*States Ins. Co. v. Bailey*, 133 F.3d 363, 370 (5th Cir. 1998) (noting that "arising out of" terms in insurance policies are "broad, general, and comprehensive terms effecting broad coverage" are "understood to mean 'originating from,' 'having its origin in,' 'growing out of' of 'flowing from.'" (cleaned up) (applying Texas law)).   In the underlying petition, Parras contends that her mental anguish was caused by Carnes allowing the Decedent's body to fall out of the removal vehicle, and that Carnes's failure to train, failure to inspect the vehicle, failure to follow the transportation checklist, failure to supervise, and failure to notify Parras of the incident caused her injury. Dkt. 18.   While her conclusory statements of causation in the petition is insufficient to support proximate cause absent facts that support proximate cause, the facts alleged certainly support but-for causation.   The alleged mental anguish would not have happened but for the failure to secure the gurney and door and follow the checklist.

The court finds that the allegations in the second amended petition in the underlying lawsuit are for damages that are potentially within the coverage of the Funeral Directors Liability Coverage Form, and Allstate therefore has a duty to defend Carnes in the underlying lawsuit.   Carnes's motion for summary judgment requesting a declaration that Allstate has a duty to defend is therefore GRANTED, and Allstate's motion requesting a declaration that it does not have a duty to defend or indemnify Carnes is DENIED.

## B.    Commercial Liability Coverage Form

Carnes does not argue that Parras's injuries are covered by the Commercial Liability Coverage Form and neither party asserts that the exclusions in that form apply to the Funeral Directors Liability Coverage Form, which has its own exclusions.   However, Allstate seeks a declaration that there is no coverage under this form and that this form's "auto" exclusion applies to preclude coverage under the form.   Dkt. 16.   It contends that the injuries in the underlying

23

petition do not meet the definitions of "bodily injury" or "property damage" as defined in the coverage portion of the Commercial Liability Coverage Form, and it argues that, regardless, the damages are excluded by the "Auto" exclusion. *Id.*

While the definition of "bodily injury" in the Funeral Directors Liability Coverage Form includes mental anguish, the definition of "bodily injury" in the Commercial Liability Coverage Form does not. The "bodily injury" definition includes only "bodily injury, sickness or disease sustained by a person." Dkt. 16, Ex. A at 127 of 166 (pages 13 of the Commercial General Liability Coverage Form). The plain language does not include mental anguish, at least to the extent it has not reached the state of a "sickness or disease," and Carnes does not argue that the definition does include Parras's damages. There is also no allegation that fits within the definition of "property damage," as Parras does not allege damage to tangible property. Thus, there is no coverage under the Commercial Liability Coverage Form when it is considered in isolation from the Funeral Directors Liability Coverage Form endorsement.

Allstate additionally argues that the auto exclusion in the Commercial Liability Coverage Form precludes coverage. It asserts that the exclusion applies to the removal vehicle because it is a "land motor vehicle . . . designed for travel on public roads," and it asserts that the incident at issue occurred while the vehicle was in motion, triggering the exclusion. Dkt. 16 at 9. Allstate notes that Carnes does not contest that the auto exclusion applies to claims under the Commercial Liability Coverage Form, as it does not even attempt to claim coverage under that form. *Id.* Carnes, indeed, does not protest that the auto exclusion precludes coverage under the Commercial

Liability Coverage Form.   However, this exclusion applies to "bodily injury" or "property damage," and since the injuries here are neither, it cannot apply.[5]

Because the underlying complaint does not include a claim for "bodily injury" or "property damage" under the Commercial Liability Coverage Form, Allstate's motion for summary judgment requesting a declaration that it does not owe a duty to defend under that form is GRANTED.

## C.   Motion to Amend Answer

Allstate moves for leave to amend its answer to add a counterclaim that seeks a declaration that it does not have a duty to defend or indemnify Carnes.[6]   Dkt. 12.   Under Federal Rule of Civil Procedure 15(a)(2), if the proposed amendment is not within 21 days after service, "a party may amend its pleading only with the opposing party's written consent or the court's leave.   The court should freely give leave when justice so requires."   Fed. R. Civ. P. 15(a)(2).

Allstate argues that its proposed counterclaim arises out of the same transaction or occurrence as Carnes's original complaint and seeks adjudication of rights and obligation under the same insurance policy for the same underlying lawsuit.   Dkt. 12.   Carnes is not opposed to

---

[5] If Parras's injuries were "bodily injury" under the form, however, the auto exclusion likely would apply because the removal vehicle is an "auto" under the exclusion, and the exclusion includes bodily injury "arising out of the . . . use . . . of any . . . 'auto' . . . owned or operated by . . . any insured.   Use includes operation and 'loading or unloading.'"   Parras's damages arose out of the improper loading of the removal vehicle.

[6] The court notes that under its usual procedures, the parties would have filed an agreed proposed scheduling order that included a deadline for amendments to the complaint and answers.   *See* Dkt. 3 (setting a May 29, 2020 deadline for the parties to file a proposed agreed scheduling order). However, the parties did not file a proposed scheduling order, so no scheduling order was entered providing for these deadlines.   The parties are instructed to review the order entered on March 5, 2020, as well as Rule 8.A of the court's procedures, which can be found at https://www.txs.uscourts.gov/sites/txs/files/judgemillersprocedures1118.pdf, and the court's Rule 16 Scheduling Order (or Docket Control Order) form, which can be found at https://www.txs.uscourts.gov/sites/txs/files/rule16schedord.pdf.

Allstate amending its answer, but it is opposed to Allstate adding the counterclaim for a duty to indemnify.  Dkt. 14.  Carnes argues that the duty to indemnify is not justiciable at this time.  *Id.*  Carnes also asserts that allowing the duty to indemnify claim will prejudice it in connection with its motion for summary judgment.  *Id.*  Allstate asserts that it seeks resolution of both issues now in the interest of judicial economy.  Dkt. 15.  It reiterates its argument that it has no duty to defend under the Funeral Directors Liability Coverage Form because the loss at issue arose out of driving with a door unsecured, not a "professional service," which it argues negates any possibility that it would have a duty to indemnify.  *Id.*  It concedes that usually the duty to indemnify cannot be adjudicated until there is a judgment in the underlying lawsuit, but argues that if there is no set of facts that if proved in the underlying lawsuit could transform the case into something that would be covered, it is appropriate to adjudicate the duty to indemnify before the underlying litigation is complete.  *Id.*  Allstate argues that this case fits that exception.  *Id.*

If the court had found that there was no duty to defend under the Funeral Directors Liability Coverage Form, it would entertain Allstate's arguments about indemnity.  However, since the court has found that there is a duty to defend under that form, the proposed request for a declaratory judgment that there is no duty to indemnify is not justiciable until the underlying case is resolved. *See D.R. Horton-Tex., Ltd. v. Markel Int'l Ins. Co.*, 300 S.W.3d 740, 743–45 (Tex. 2009) ("The insurer's duty to indemnify depends on the facts proven and whether the damages caused by the actions or omissions proven are covered by the terms of the policy."); *see also Griffin*, 955 S.W.2d at 82 (discussing how an insurer may have a duty to defend but no duty to indemnify and noting that generally there is no justiciable controversy regarding the duty to indemnify before judgment is rendered against an insured, but holding that "parties may secure a declaratory judgment on the insurer's duty to indemnify before the underlying tort suit proceeds to judgment" "when the insurer

26

has no duty to defend *and the same reasons that negate the duty to defend likewise negate any possibility the insurer will ever have a duty to indemnify*.").

Because that proposed counterclaim relating to indemnity is not justiciable at this time, the amendment would be futile.  Accordingly, Allstate's motion to amend, to the extent it seeks to add a request for a declaratory judgment that it has no duty to indemnify Carnes in the underlying lawsuit, is DENIED.  The motion to amend is otherwise GRANTED AS UNOPPOSED.

## IV. CONCLUSION

Carnes's motion for summary judgment (Dkt. 11) is GRANTED.  Allstate has a duty to defend Carnes in the 80th Judicial District Court of Harris County, Texas, in the lawsuit styled *Kristin Parras v. Carnes Funeral Home, Inc.*, No. 2019-67238.

Allstate's motion for summary judgment (Dkt. 16) is GRANTED IN PART AND DENIED IN PART.  It is GRANTED in that its request for a declaration that it does not owe a duty to defend Carnes in the same lawsuit under the Commercial Liability Coverage Form contained at pages 115–30 of 166 of the Policy.  However, Allstate's motion for summary judgment is DENIED to the extent is seeks a declaration that it has not duty to defend Carnes in the same lawsuit under the Funeral Directors Liability Coverage Form.  The court makes no determination regarding Allstate's request for summary judgment on the duty to indemnify, which is not part of this case.

Allstate's motion for leave to amend (Dkt. 12) so that it can add a counterclaim seeking a declaration about the duty to indemnify, specifically, is DENIED.  Allstate's motion for leave to amend (Dkt. 12) is otherwise GRANTED AS UNOPPOSED.

The court will enter a final judgment concurrently with this memorandum opinion and order.

Signed at Houston, Texas on December 23, 2020.

_____
Gray H. Miller
Senior United States District Judge